Deborah AXTELL, individually and as Personal Representative of the Estate of Paul W. Axtell, Deceased, Plaintiff,

v.

UNITED STATES of America, Commissioner of Internal Revenue, Internal Revenue Service, Department of the Treasury, Defendant.

No. 93–CV–0350–B.

United States District Court,
D. Wyoming.

April 25, 1994.

W. Perry Dray, Brandin Hay, Dray, Madison & Thomson, Cheyenne, WY, for plaintiff.

Donald R. Wrobetz, Asst. U.S. Atty., Cheyenne, WY, Joel J. Roessner, Dept. of Justice, Tax Div., Washington, DC, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon defendant's motion to dismiss and the plaintiff's opposition thereto, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

The plaintiff in this case is the representative and beneficiary of the estate of Paul W. Axtell. Paul Axtell died on March 19, 1979. His estate originally elected to defer payment of estate taxes pursuant to Internal Revenue Code ("IRC") § 6166. Section 6166 allows for a deferral of estate taxes when the estate consists largely of interest in a closely held business. *See* 26 U.S.C. § 6166 (1986).

In 1985, in order to avoid the high interest expense on the outstanding estate tax, the Axtell estate obtained a third party loan from the Wyoming Farm Loan Board to pay down the estate tax liability. As a result of the Internal Revenue Service's ("IRS") allowance of interest deductions as credits against the estate tax and interest still owing, the estate tax and interest was fully paid as of December 16, 1988. In the years 1986 through 1989, the estate made, and the IRS allowed, refund claims based on IRC § 2053 administrative expense deductions for loan interest paid during those years. When the Axtell estate made a refund claim based on the same interest payments in 1990, however, the IRS disallowed the claim as untimely under IRC § 6511.

In this action, the Axtell estate seeks to have the disallowance of the 1990 claim overruled, seeks judgment for a tax refund in the amount of $12,843.94, and seeks judgment for "future refunds" for continuing interest expense deductions. The case is currently before the Court on the IRS's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### Standard of Review

 A motion to dismiss under Rule 12(b)(1) raises the question of a court's subject matter jurisdiction over the action. A motion under Rule 12(b)(1) may be used to attack two different types of defects. The first defect is the pleader's failure to comply with Rule 8(a)(1) in that he failed to plead sufficient facts to demonstrate the federal court's jurisdiction over the subject matter of the case. *See, e.g., Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *Sierra Club v. Shell Oil Co.,* 817 F.2d 1169, 1172 (5th Cir.), *cert. denied,* 484 U.S. 985, 108 S.Ct. 501, 98 L.Ed.2d 500 (1987). The second defect that may be challenged under Rule 12(b)(1) is the court's actual lack of jurisdiction over the subject matter of the case. This defect may exist despite the formal sufficiency of the allegations in the complaint. *See, e.g., KVOS, Inc. v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936).

There are, therefore, two different types of Rule 12(b)(1) challenges which correspond to these defects. The first is a facial challenge of the complaint which challenges the sufficiency of the pleading. The second, in which the court may consider matters outside the pleadings, challenges the truth of the factual averments upon which the court's jurisdiction depends.

 In this case, the defendant has made a facial challenge to the sufficiency of the allegations of jurisdiction in the plaintiff's complaint. Regardless of the character of the Rule 12(b)(1) motion, the Court must construe the complaint broadly and liberally, in conformity with the principles underlying Rule 8(f). *See* 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1350, at 218 (2d ed. 1990). "Whether the federal district court ha[s] jurisdiction [over] the action must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir.1971). Finally, the burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266 (6th Cir.1990); *Professional Investors Life Ins. Co. v. Roussel,* 445 F.Supp. 687, 691 (D.Kan. 1978).

### Discussion

In order to understand the claims of the parties, it is necessary to review several legal principles concerning tax refund actions, in general, and estate taxes, in particular. Accordingly, the Court first addresses the legal doctrines which underlie the issue in this case. After an examination of the legal background, this Court will consider the facts in this case.

### A. The Legal Background

#### 1. Subject Matter Jurisdiction in a Tax Refund Action

A taxpayer may bring a refund action in district court for recovery of (1) a tax alleged to have been erroneously or illegally assessed or collected, (2) a penalty alleged to have been collected without authority, and/or (3) any sum alleged to be excessive or in any manner wrongfully collected. IRC § 7422(a).

 A refund action, however, may not be maintained unless the taxpayer has first exhausted his administrative remedies by filing a claim for refund with the IRS. Under IRC § 6511(a), a claim for refund must "be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such period expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." In addition, even when a claim for refund is filed in accordance with § 6511(a), any refund is limited to amounts paid within three years of the filing of the claim for refund. IRC § 6511(b)(2)(A); *King v. United States,* 495 F.Supp. 334, 336 (D.Neb.1980).

 Where no claim for refund is made within the period of limitations set forth in section 6511, the district court must dismiss a § 7422 refund action for lack of subject matter jurisdiction. *Dalm v. United States,* 494 U.S. 596, 602, 110 S.Ct. 1361, 1365, 108 L.Ed.2d 548 (1990) (holding that "unless a

claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court."). In other words, in order to maintain a refund action in court, a taxpayer must first have made a claim for refund to the IRS which was within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever period expired later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. In the absence of a timely claim for refund, the refund action is time barred and cannot be heard by any court.

## 2. The Tax Deduction for Interest Paid on Deferred Payments of the Estate Tax

IRC § 2001 imposes a tax on the estates of decedents who were citizens or residents of the United States. The code defines the gross estate of a decedent broadly, to include the value of "all property, real or personal, tangible or intangible . . . ." *Id.* § 2031. A number of deductions from the gross estate are allowed for the purposes of determining the taxable estate, that is, the value of the estate which is actually taxed. *Id.* § 2051. Under section 2053, certain expenses, indebtedness and taxes constitute one category of deductions allowed for the purpose of determining the taxable estate. Where the amount of a section 2053 deduction is not known, the deduction may nevertheless be taken if the amount is ascertainable with reasonable certainty and will be paid. Treas. Reg. § 20.2053–1(b)(3).

■ Section 6166 provides that where an estate consists largely of interest in a closely held business, the estate tax may be deferred. If the estate chooses to defer payments under that section, it must pay interest on the deferred payments. IRC §§ 6166(f) & 6601(j). Where an estate defers payment of the estate tax, paying the tax in installments, together with interest, the IRS is, in effect, in the position of a lender, while the estate is the borrower. *Estate of Bahr v. Comm'r,* 68 T.C. 74, 82–83, 1977 WL 3655 (1977). The interest paid on estate tax payments deferred under section 6166, however, may be deducted from the value of the

taxable estate as an IRC § 2053(a)(2) administrative expense. *Snyder v. United States,* 582 F.Supp. 196, 200 (D.Md.1984); *Estate of Bailly v. Comm'r,* 81 T.C. 246, 249, 1983 WL 14862 (1983); *Estate of Bahr v. Comm'r,* 68 T.C. 74, 83, 1977 WL 3655 (1977). Because the interest paid on deferred estate tax payments may be deducted from the value of the taxable estate, thereby reducing the estate tax owed, the deferred payment of estate taxes creates a situation where, over time, the total tax liability imposed on the estate may be reduced due to the payment or interest in connection with the deferred payment of that liability.

The suggestion that an estate should be allowed a section 2053(a)(2) administrative expense deduction for estimated future interest that it may pay in connection with the deferred payment of its estate tax has been rejected by the IRS. This is because, until the interest is in fact paid, the possibility that the interest will not be paid exists. This runs afoul of the rule mentioned above that an estimated section 2053 deduction may be made only if the amount is (1) ascertainable with reasonable certainty and (2) will be paid. Treas.Reg. § 20.2053–1(b)(3). The IRS has adopted the position, therefore, that interest on the deferred payment of estate taxes only becomes deductible as it accrues. *Snyder,* 582 F.Supp. at 198–200; *Bailly,* 81 T.C. at 251; *Estate of Harrison, Jr.,* 56 T.C.M. (P–H) ¶ 87,007 at 44, 1987 WL 40086 (1987); *Estate of Hoover,* 54 T.C.M. (P–H) ¶ 85,183 at 789, 1985 WL 14810 (1985); *Estate of Spillar,* 54 T.C.M. (P–H) ¶ 85,529 at 2379–81, 1985 WL 15151 (1985); Rev.Rul. 80–250, 1980–2 C.B. 278. Accordingly, no deduction is allowed for estimated interest to be paid in the future.

■ Although an estate that defers payment of the estate tax must wait until after it actually pays the interest to the IRS to claim an administrative expense deduction for that interest, the estate eventually will be able to realize the full benefit of the deduction because the section 6511(a) limitations period does not expire during the deferred payment period. The section 6511(a) limitations period requires that the administrative claim for refund be filed by the taxpayer "within 3

years from the time the return was filed or *2 years from the time the tax was paid*," whichever period expires later. IRC § 6511 (emphasis added). Because the estate tax is not fully paid until the last installment of the deferred payment is made, the limitations period for filing a claim for refund remains open until the last installment is paid and for two years thereafter. *See Bailly*, 81 T.C. at 253 (stating "no statute of limitations problem can arise with earlier payments since no overpayment can occur until the final installment [of the deferred tax liability] is paid").

### 3. The Tax Deduction for Interest Paid on a Loan Obtained by an Estate to Pay the Estate Tax

When an estate borrows funds from a private lender to satisfy its estate taxes, the interest on the loan remains deductible as an administrative expense deduction under IRC § 2053(a)(2). *Hipp v. United States*, 72–1 U.S.T.C. 84,678, 84,680, 1971 WL 480 (D.S.C. 1971); *Estate of Sturgis*, 56 T.C.M. (P–H) ¶ 87,415 at 2155, 1987 WL 40487 (1987). As with interest on deferred estate tax payments, interest on a private loan for the purpose of paying federal estate tax generally does not meet the Treasury Regulation 20.2053–1(b)(3) test for the allowance of estimated administrative expenses, and therefore the interest may only be claimed once the interest has actually been paid.[1]

However, unlike an estate which "borrows" money from the IRS by deferring payment for the estate tax, and which, as a result, does not fully pay the estate tax until the last installment is paid, an estate which borrows money from a private lender to pay its federal estate tax pays its tax liability in full. Consequently, where an estate borrows funds from a private lender, the section 6511(a) limitations period may expire before the estate has made all of the interest payments

which might otherwise be allowed as administrative expense deductions. In other words, by operation of the section 6511(a) limitations period, the treatment of an estate which defers payment of the estate tax and an estate which borrows money from a private lender may be quite different even though both estates are paying interest on their tax payment. An estate that makes deferred payments to the IRS will be able to submit an administrative refund claim for all interest paid because it will not fully pay the estate tax until the last payment is made. In contrast, an estate that borrows money and pays the estate tax liability in full will be unable to file a claim for administrative refund once the section 6511(a) limitations period expires, even though it may continue to pay interest on the loan after that time.

### B. Analysis

Paul Axtell died on March 19, 1979. His estate initially elected to defer payment of estate taxes pursuant to IRC § 6166. However, in 1985, the Axtell estate obtained a private loan to pay down the estate tax liability. As a result of the IRS' allowance of interest deductions as credits against estate tax and interest still owing, the estate tax and interest was fully paid as of December 16, 1988. In the years 1986 through 1989, the estate made, and the IRS allowed, refund claims based on IRC § 2053 administrative expense deductions for loan interest paid during those years. However, when the Axtell estate made a refund claim based on the same interest payments in 1990, the IRS disallowed the claim as untimely under IRC § 6511.

The estate makes two arguments in challenging this result. First, the estate argues that its Form 706 Amended Estate Tax Returns constituted protective claims which

---

1. The question remains open, however, whether an estate can avoid this rule in a particular case by demonstrating that the possibility of the interest not being paid is remote. *Compare Spillar*, 54 T.C.M. (P–H) at 2381 (even the remote possibility of nonpayment of interest prevents claiming a deduction as estimated future administrative expense); *with Estate of Graegin*, 57 T.C.M. (P–H) ¶ 88,477 at 2447, 1988 WL 98850 (1988) (allowing estate's deduction of estimated future administrative expense for interest to be paid because amount of interest is certain and co-executor intends to pay the interest). Regardless of whether an estate may be able to meet the 20.2053–1(b)(3) requirements with respect to a claim for estimated future interest on a private loan used to pay the estate tax, such a claim was not made in this case and need not be addressed by this Court.

were within the section 6511(a) limitations period. Second, the estate contends that the section 6511(a) limitations period, as applied to the class of taxpayers that elect to obtain private loans to pay their estate taxes, results in a disparity of treatment which violates the equal protection component of the due process clause of the Fifth Amendment.

### 1. Forms 706 as Protective Claims

The existence of protective claims as valid assertions of present rights has long been recognized by the courts. *See United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941) (holding that taxpayer's letter to the IRS which was sent before the limitations period had run constituted a protective claim, preserving a claim for refund made in a formal claim filed after the statute of limitations had run) (citing *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 70–71, 53 S.Ct. 278, 281, 77 L.Ed. 619 (1933); *Moore Ice Cream Co. v. Rose,* 289 U.S. 373, 384, 53 S.Ct. 620, 624, 77 L.Ed. 1265)). In *Kales,* the Supreme Court stated that "a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because [it is] too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period." *Kales,* 314 U.S. at 194, 62 S.Ct. at 218.

■ The Eleventh Circuit has recently articulated the modern standards governing protective claims. In *Mills v. United States,* 890 F.2d 1133, 1135 (11th Cir.1989), the court recognized that "[t]here are no rigid guidelines except that an informal claim must have a written component and should 'adequately apprise the Internal Revenue Service that a refund is sought for certain years.' " (citing *Arch Engineering Co., Inc. v. United States,* 783 F.2d 190, 192 (Fed.Cir.1986)). The court went on, however, to explain that:

'[i]t is not enough that the Service have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or

by a different taxpayer. On the other hand, the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. In addition to the writing and some form of request for a refund, the only essential is that there be made available sufficient information as the tax and the year to enable the Internal Revenue Service to commence, if it wishes, an examination into the claim.'

*Id.* (quoting *American Radiator & Standard Sanitary Corp. v. United States,* 318 F.2d 915, 920 (Ct.Cl.1963)). Thus, in order for a protective claim to be valid the claim (1) must have a written component, (2) must apprise the IRS that a refund is sought and (3) must specify the tax and the year or years for which the refund is sought sufficiently for the IRS to investigate the claim.

The *Mills* court applied these standards to an employer's FICA tax credit request filed on Form 941–C, occurring within the relevant statute of limitations, when the employee submitted a request for refund of FICA deductions from his wages after the statute of limitations had run. *Id.* at 1134–35. The court concluded that the employer's Form 941–C FICA claim was sufficient notice to toll the statute of limitations for its employee because the form provided information about the employer's claim, the employee's identity, social security number and the erroneous FICA tax payments made on his behalf. *Id.* at 1136.

■ Here, the estate contends that the Form 706 Amended Estate Tax Returns which it filed from 1987 to 1990 constitute protective claims sufficient to toll the section 6511 statute of limitations. This Court cannot agree. The Amended Estate Tax returns certainly satisfy the written claim component of a protective claim. However, what is lacking here is sufficient information as to the tax and the year to enable the IRS to commence an examination into the claim. The estate argues that the very purpose of its filings of consecutive Forms 706 was to alert the IRS of its request for a refund. While this is true, the request for refund to which the estate refers is the *present* interest

expense deduction, that is, the refund for the year in which the Form 706 was filed. The estate fails to demonstrate where its Forms 706 apprise the IRS of any *future* interest administrative expense deductions that it seeks to take in the years to come. Moreover, the estate fails to show where it has apprised the IRS of the years for which it intends to seek future deductions. The most that can be averred from the estate's allegations is that because it filed Forms 706 for prior years, the IRS should be on notice that it will continue to do so in the future. As the *Mills* court stated, it is insufficient that the IRS "have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year ..." *Mills,* 890 F.2d at 1135 (citation omitted).

Accordingly, this Court concludes that the Forms 706 filed by the estate do not contain sufficient information regarding future administrative expense deductions to constitute protective claims.[2] As a result, the 1990 Form 706 was filed after the section 6511(a) limitations period had run and thus, is time barred.

## 2. The Constitutionality of § 6511(a)

The estate argues that even if the Forms 706 do not constitute protective claims, the section 6511(a) limitations period as applied to taxpayers that elect to take private loans to pay their estate tax debts is unconstitutional. As set forth above, an estate that makes deferred payments to the IRS will generally be able to submit administrative refund claims for all interest paid because it will not fully pay the estate tax until the last payment is made and thus, falls within the section 6511(a) limitations period which does not begin to run until the estate tax is fully paid. An estate that borrows money from a private lender to pay the tax liability in full, however, will be unable to file a claim for refund once the section 6511(a) limitations period has expired, even though it may continue to pay interest after that time.

The estate, which falls into the latter category, claims that this classification violates the Fifth Amendment to the United States Constitution because there is no rational basis for the distinction between taxpayers that results from the application of section 6511(a).

■■■ Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has recognized that the Fifth Amendment does contain an element of equal protection, which "stem[s] from our American ideal of fairness." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The equal protection component of the Fifth Amendment forbids discrimination that is "so unjustifiable as to be violative of due process." *Id.* The Supreme Court has explained that:

> [t]he guarantee of equal protection under the Fifth Amendment is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity. It is well settled that where a statutory classification does not itself impinge on a right or liberty protected by the Constitution, the validity of classification must be sustained unless "the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective." *McGowan v. Maryland,* 366 U.S. [420, 425 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393] (1961)]. This presumption of constitutional validity, however, disappears if a statutory classification is predicated on criteria that are, in an constitutional sense, "suspect," the principal example of which is a classification based on race, *e.g., Brown v. Board of Education,* 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873] [ (1954) ].

*Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980) (footnote omitted). Thus, in evaluating a Fifth Amendment equal protection challenge to a federal statute which does not abridge a fundamental right or impose a suspect classifica-

---

**2.** That is not to say, however, that a Form 706 could never constitute a valid protective claim. In order to do so the taxpayer must apprise the IRS of its intention to take future interest expense deductions and must detail the factual basis for the claim, including an estimation of anticipated future interest payments and the years in which those payments will be made.

tion, the Court must uphold the statute if there is a rational relationship between the classification and any legitimate governmental purpose. *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983); *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); *Eaton v. Jarvis Products Corp.*, 965 F.2d 922, 929 (10th Cir.1992).

■ Moreover, when the statute at issue is a federal tax statute, it enjoys a heightened presumption of constitutionality. As the Supreme Court stated, "the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." *Regan*, 461 U.S. at 547, 103 S.Ct. at 2001 (citing *Madden v. Kentucky*, 309 U.S. 83, 87–88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940)). The estate recognizes its heavy burden but, nevertheless maintains that section 6511(a) is unconstitutional as it applies to the estate and to other taxpayers in the same category.

■ The purpose of statutes of limitation, such as the IRC § 6511(a) limitations period at issue, is well-established and is certainly a legitimate governmental purpose. As the Supreme Court in *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979), stated:

> Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter*, 101 U.S. 135, 139 [25 L.Ed. 807] (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 [64 S.Ct. 582, 586, 88 L.Ed. 788] (1944).

Moreover, a statute of limitations is not without rational basis merely because one classification receives a less favorable limitations period than another. In *Scheidt v. Comm'r*, 967 F.2d 1448, 1451–52 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 811, 121

L.Ed.2d 684 (1992), the Tenth Circuit Court of Appeals held that the equal protection clause of the Fourteenth Amendment was not violated by a statutory scheme which provided for the tolling of a three year limitations period for making tax assessments against taxpayers who receive improperly addressed notices of tax deficiencies but did not provide for the tolling as to those taxpayers who did not receive a misaddressed notice. *See also, Schafer v. Aspen Skiing Corp.*, 742 F.2d 580 (10th Cir.1984) (holding that state's three year limitations period in which to bring an action for injuries sustained at a ski area, which imposes a shorter limitations period than the six year period for common law negligence actions, did not violate the equal protection clause of the Fourteenth Amendment).

The Court recognizes that the limitations period at issue in this case, IRC § 6511(a), prevents estates that elect to take loans from private lenders to pay off their estate tax liabilities from claiming the administrative expense deduction for interest paid on their loan more than two years after the payment of the estate tax in full and more than three years after the filing of the estate tax return. The Court also recognizes that this result is inconsistent with the treatment of those estates that elect to defer payment of the estate tax to the IRS, because those estates are able to deduct all interest paid to the IRS.

The Court concludes, however, that this uneven treatment is not unconstitutional. Section 6511(a) serves the rational purpose of establishing a time limit by which taxpayers must bring an administrative claim for refund against the IRS. Tying the limitations period for an administrative claim to the time when the tax is paid in full or when the tax return is filed is certainly a rational manner in which to accomplish the legitimate purpose of finality and closure. Moreover, taxpayers in the same situation as the estate in this case unilaterally elect to take private loans to pay their estate tax fully, knowing that the section 6511(a) may prevent them from deducting all interest paid on their loans as administrative expenses. Finally, as mentioned above, a taxpayer could easily avoid

this result by making a protective claim for the deduction of future interest payments.

In sum, the Axtell estate has failed to assert its claim for administrative expense deductions within the section 6511(a) limitations period. Therefore, that claim is now time barred. In addition, the section 6511(a) limitations period does not violate the equal protection component of the Fifth Amendment. This Court is accordingly without subject matter jurisdiction over the estate's claims and this action must be dismissed. *See Dalm*, 494 U.S. at 602, 110 S.Ct. at 1365.

THEREFORE, IT IS

**ORDERED** that the defendant's motion to dismiss be, and the same hereby is, **GRANTED.**